## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANSELMO CARRILLO, | ) | |
| | ) | |
| Movant, | ) | No. 02 C 8031 |
| | ) | |
| v. | ) | Honorable Charles R. Norgle |
| | ) | |
| UNITED STATES of AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the court is Anselmo Carrillo's Motion to vacate, set aside, or correct his sentence

brought pursuant to 28 U.S.C. § 2255. Movant, Anselmo Carrillo ("Carrillo"), challenges his

sentence for possession with intent to distribute cocaine, and conspiracy with intent to distribute

cocaine. For the reasons stated below, the motion is denied.

## I. BACKGROUND[i]

### A. Facts

In August 1998, Ross Braatsch ("Braatsch"), the owner of an electronics store, agreed to

provide information to Drug Enforcement Administration ("DEA") agents regarding certain

customers whom Braatsch suspected were involved in drug trafficking. Braatsch's store sold and

installed hidden compartments in cars, called "traps," which could only be opened by remote

control. These traps are commonly used for legitimate purposes, such as the storage of car stereo

---

[i] The facts underlying Carrillo's convictions are recited in United States v. Carrillo, 269 F.3d 761 (7th Cir. 2001).

1

components. However, Braatsch informed DEA agents that one of his customers, Tavo Perez ("Perez") had these traps installed in twelve different cars, and Braatsch suspected that Perez was using the traps to transport drugs. Braatsch identified Carrillo as one of the individuals who came to pick up Perez's cars after the traps had been installed. Braatsch also indicated to the DEA agents that he had shown Carrillo how to operate the traps.

In December of 1998, Perez brought two of his cars, including a red Mercury Sable, into Braatsch's store for repairs. While the Sable was being repaired, a DEA agent confirmed that it contained a trap and recorded the license plate number. The DEA then began conducting surveillance of Perez's residence. On January 27, 1999, the DEA observed the red Mercury Sable at Number 20, West 327 Belmont Place in Addison, Illinois and set up surveillance on that location as well. At 3:45 P.M. on that date, Carrillo and two other men arrived at the Belmont Place location. Carrillo then got into the Sable and drove to 109 Clarendon Street in Addison. Initially, the Sable was parked on the driveway of the residence, but the DEA agents later noticed it was no longer on the driveway, and the garage door had been closed.

Approximately two hours after the cars arrived at the residence, Carrillo was seen driving away in the red Mercury Sable. Two other men then left in a red Toyota pick-up truck. The DEA agents attempted to follow the Toyota but it was driven evasively, and the agents lost the car. Approximately twenty minutes later they found the Toyota in a movie theater parking lot, and there were now three men inside the cab of the truck. The red Mercury Sable was also parked in the same lot. The Toyota left the parking lot and was again driven in an evasive manner. Upon returning to the movie theater parking lot, the truck was stopped by the DEA agents.

2

At the time the Toyota was stopped, Carrillo was in the passenger seat. On his person, the agents found a garage door opener for 109 Clarendon, a house key to the basement at 109 Clarendon, and a computer chip that operated the trap inside the red Mercury Sable. Carrillo and the other two men were arrested and taken to the Addison Police Department. Carrillo identified himself using the alias of "Joshua Rivera," and had a driver's license in that name. During questioning by investigators, Carrillo gave multiple stories regarding his activities that day.

Upon receiving consent to search the Sable, the DEA agents found 48 one-kilogram bricks of cocaine inside the car's trap. The agents also received consent to search 109 Clarendon and 20 West 327 Belmont. The agents found a trap in the basement floor of 20 West 327 Belmont that contained two kilograms of cocaine, a scale, a semi-automatic handgun, ammunition, and drug ledgers. Carrillo and another Defendant, Francisco Soto, were indicted for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and conspiracy with intent to distribute cocaine in violation of 21 U.S.C. § 846.

## B. Procedural History

On December 10, 1999, a jury found Carrillo guilty of possession with intent to distribute cocaine, and conspiracy with intent to distribute cocaine. Carrillo called no witnesses on his behalf. On June 21, 2000, the court sentenced Carrillo to 151 months imprisonment and five years supervised release. On appeal, the Seventh Circuit affirmed both the conviction and sentence. Carrillo, 269 F.3d at 771.

On November 6, 2002, Carrillo filed his Motion under 28 U.S.C. § 2255. The court then ordered the government to file a Response to Carrillo's Motion. On October 31, 2003, the government filed its Response. Finally, Carrillo filed his Reply to the Government's Response on December 4, 2003. Carrillo's Motion is fully briefed and before the court.

3

## II. DISCUSSION

### A. Standard of Decision

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct

his or her sentence. This relief is available only in limited circumstances, such as where an error

is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of

justice." See Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004). The statute states:

> A prisoner in custody under sentence of a court established by Act of Congress
> claiming the right to be released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the sentence was in excess of
> the maximum authorized by law, or is otherwise subject to collateral attack, may
> move the court which imposed the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255 ¶ 1. If the court determines that any of these grounds exists, it "shall vacate

and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial

or correct the sentence as may appear appropriate." 28 U.S.C. § 2255 ¶ 2. In making that

determination, the court must review evidence and draw all reasonable inferences from it in a

light most favorable to the government. See United States v. Galati, 230 F.3d 254, 258 (7th Cir.

2000); Carnine v. United States, 974 F.2d 924, 928 (7th Cir. 1992).

Section 2255 petitions are subject to various bars, including that of procedural default.

They are "neither a recapitulation of nor a substitute for a direct appeal." McCleese v. United

States, 75 F.3d 1174, 1177 (7th Cir. 1996) (citations omitted). Thus, a § 2255 motion cannot

raise: (1) issues that were raised on direct appeal, unless there is a showing of changed

circumstances; (2) non-Constitutional issues that could have been raised on direct appeal, but

were not; and (3) Constitutional issues that were not raised on direct appeal. See Belford v.

United States, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994)).

There are two exceptions to the procedural default rule for Constitutional issues not raised on appeal: (1) if the movant demonstrates cause for failing to raise the issue and actual prejudice resulting therefrom; or (2) the court's refusal to consider the Constitutional issue would result in a fundamental miscarriage of justice, which requires a showing of actual innocence. See Belford, 975 F.2d at 313 (collecting authority); see also McCleese, 75 F.3d at 1177-78 (discussing fundamental miscarriage of justice). With these principles in mind, the court examines Carrillo's Motion.

## B. Carrillo's Claims for Relief under § 2255

Carrillo raises a total of three claims which he asserts entitle him to relief under § 2255. First, he asserts that this court had an obligation to inform him of his right to an interpreter when he was communicating with his counsel outside of court. Carrillo next asserts that a stipulation he entered into was improperly used by the government during its closing remarks. Lastly, Carrillo asserts that his counsel at trial was constitutionally ineffective.

### 1. Carrillo's Claim that the Court had an Obligation to Inform Him of his Right to have an Interpreter with Counsel Outside of Court

Carrillo asserts that he never received advice as to his right to have an interpreter appointed to assist in his communications with counsel outside of the courtroom. Mem. and Decl. on Mot. to Vacate Sentence, at 2-3; Pet.'s Reply, at 3. Carrillo, however, is procedurally barred from bringing this claim in his § 2255 motion, as he neglected to raise this issue on direct appeal to the Seventh Circuit. See Carrillo, 269 F.3d at 766. Carrillo makes no showing of cause

or prejudice as to why he did not raise this issue on direct appeal. See Menzer v. United States, 200 F.3d 1000, 1005 (7th Cir. 1999) (quoting Barker v. United States, 7 F.3d 629, 632 (7th Cir. 1993)).

Moreover, this assertion fails on the merits. Carrillo's claim that he could not communicate adequately with his English-speaking attorney is directly refuted by both his attorney and the record. George N. Leighton, Carrillo's attorney at trial, has indicated that he was able to communicate effectively with Carrillo. See Leighton Aff., ¶ 3. In addition, Braatsch testified at trial that Carrillo was able to communicate in English. Trial Tr., at 499. Carrillo's assertion that the court had an obligation to inform him of his right to have an interpreter outside the courtroom therefore fails.

### 2. Carrillo's Claim that the Government Improperly Used a Stipulation during Closing Arguments

Carrillo next argues that the government, during closing arguments, improperly transformed a factual stipulation regarding the quantity and location of the seized cocaine into a confession. Mem. and Decl. on Mot. to Vacate Sentence, at 3-4; Pet.'s Reply, at 3. Carrillo, however, is procedurally barred from bringing this claim under § 2255, as he also neglected to raise this claim on direct appeal. See Carrillo, 269 F.3d at 766. A § 2255 motion is not intended to be a "substitute for a direct appeal." McCleese, 75 F.3d at 1177. Carrillo again makes no showing of cause or prejudice as to why he did not raise the issue on direct appeal. See Menzer, 200 F.3d at 1005.

Carrillo's claim that the government improperly transformed this stipulation into a confession fails on the merits as well. The stipulation that Carrillo and the government entered

6

into stated: "Government Exhibit Red Trap Car Cocaine is approximately 47.96 kilograms of cocaine. The cocaine is 81% pure cocaine hydrochloride." Trial Tr., at 599. In its closing argument, the government made the following statement: "First of all, there is no dispute among the parties that we are dealing with 48 kilograms of cocaine and that it was that cocaine that was seized from the red Mercury Sable on January 27th. No dispute. That was stipulated to." Id. at 641. Contrary to Carrillo's assertion, this statement does not convey the message that he confessed to the charges before him. This statement simply reiterated the stipulated-to fact that approximately 48 kilograms of cocaine were seized from a red car. This statement also admittedly added the fact that this seizure occurred on January 27th, but the defense did not dispute the date of the seizure. See id. at 671-72. At any rate, there is no merit to the claim that the use of this stipulation by the government was improper or constituted any sort of a confession by Carrillo.

### 3. Carrillo's Claim of Ineffective Assistance of Counsel

In order to establish that his counsel was ineffective, Carrillo must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." See Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." Id. at 521 (quoting Strickland, 466 U.S. at 688) (internal quotations omitted). Prejudice is established by showing that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Benefiel v. Davis, 357 F.3d 655, 663 (7th Cir. 2004) (quoting Strickland, 466 U.S. at 694). An ineffective assistance of counsel claim may be brought in a § 2255 motion, regardless of whether or not the claim was raised on appeal. Massaro v. United States, 538 U.S. 500, 504 (2003).

7

When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689); see also Coleman v. United States, 318 F.3d 754, 758 (7th Cir. 2003). There is therefore a strong presumption that Carrillo's attorney performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004). To succeed in his claim, Carrillo must show "'errors so serious that counsel was not functioning as the 'counsel' guaranteed [to him] by the Sixth Amendment.'" See Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

Carrillo advances four arguments that his counsel's performance was deficient. First, Carrillo asserts that his counsel erred in not securing interpreter services for their communications outside of the courtroom. Mem. and Decl. on Mot. to Vacate Sentence, at 4-5. Secondly, Carrillo asserts that counsel failed to give him sufficient information regarding the nature of factual stipulations, specifically that they could be used as confessions, and that Carrillo therefore entered into the stipulation unknowingly and unintelligently. Id. at 5. Carrillo also argues that his counsel did not inform him of the difference between a guilty plea and a jury trial, and also failed to mention the possibility that he could enter a conditional plea of guilty. Id. Lastly, Carrillo asserts that counsel did not make a reasonable argument on his behalf during sentencing, and also unreasonably neglected to seek a downward departure based on Carrillo's status as a deportable alien. Id. at 6.

8

*a. Counsel failed to arrange for an interpreter outside of the courtroom*

Carrillo asserts that his counsel was ineffective because he did not arrange for an interpreter to be present during communications outside of the courtroom. According to Carrillo, this impeded his understanding of issues pertinent to trial because he speaks no English. See id. at 4-5; Def.'s Decl. ¶ 3.

Counsel's performance may be deemed ineffective if he or she was unable to communicate with his or her client due to a language barrier. Gallo-Vasquez v. United States, 402 F.3d 793, 799 (7th Cir. 2005). At the outset, the court notes that Carrillo's failure to raise this issue at an earlier time speaks against its credibility. See id. at 799 n.1 ("petitioner's failure to complain earlier about a problem that would have been obvious to him - an almost complete inability to communicate with his lawyer - calls into question whether such a problem really existed"). Moreover, defense counsel submitted an affidavit explaining that he had no difficulty communicating with Carrillo in English, and based upon his experience did not feel that an interpreter was needed. Leighton Aff., ¶ 3. There is also evidence from the record that Carrillo had communicated with Braatsch in English. Trial Tr., at 499. In light of these circumstances, defense counsel's decision not to retain an interpreter for communications with Carrillo outside the courtroom was not objectively unreasonable. See Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688).

Carrillo also fails to establish that this alleged failure prejudiced him. As stated above, the record shows that there were no problems in communication between Carrillo and his attorney. Carrillo does not explain how the ultimate result of his trial and sentencing would have been changed by the presence of an interpreter in communications with counsel outside of the

9

court proceedings. Carrillo's ineffective assistance of counsel claim based on the failure to have an interpreter present during communications outside of the court therefore fails.

### b. Counsel failed to give Carrillo sufficient information regarding stipulations

Carrillo next asserts that counsel did not provide him with sufficient information regarding the nature of factual stipulations, thus causing Carrillo to enter into a stipulation unknowingly and involuntarily. Mem. and Decl. on Mot. to Vacate Sentence, at 5. Carrillo also challenges counsel's failure to object to the government's alleged use of the stipulation as a confession. Id.

Carrillo is operating under the mistaken impression that the simple factual stipulation he entered into somehow operated as, or was improperly transformed into, a confession of his guilt as to these offenses. As the court explained earlier, this was a simple stipulation to certain facts regarding the amount of cocaine seized, and the color of the automobile from which the cocaine was seized. See infra II.B.2. This factual stipulation in and of itself cannot be understood as a unknowing and involuntary confession.

As to Carrillo's assertion that counsel's failure to object to the Government's use of this stipulation constituted the ineffective assistance of counsel, Carrillo must show that counsel's actions were objectively unreasonable, and that counsel's deficient performance prejudiced Carrillo's defense. See Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 687). When counsel enters into a stipulation, the decision is considered a tactical one. United States v. Kennedy, 797 F.2d 540, 543 (7th Cir. 1986). The court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsel's strategic decisions in this case. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990). Moreover, a competent defense attorney may

10

reasonably decide not to draw excessive attention to unflattering facts by declining to object to their presentation during closing arguments. See United States v. Allen, 390 F.3d 944, 951 (7th Cir. 2004). Counsel's performance regarding this stipulation was thus not objectively unreasonable. See Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688).

Carrillo also fails to assert how the trial or sentencing would be different if his counsel had objected to the stipulation's use during the government's closing arguments. Given the substantial evidence presented against Carrillo at trial, such an objection would not have made any difference in the outcome of this trial. See Carrillo, 269 F.3d at 769-70 (explaining that in addition to the stipulation regarding the cocaine, the government presented evidence showing, *inter alia*, that Carrillo had picked up cars from Braatsch after traps had been installed, that Braatsch had shown Carrillo how to operate the traps, and that Carrillo had keys to the red Sable). Counsel's performance regarding this stipulation was therefore not prejudicial to Carrillo. See Wiggins, 539 U.S. at 521 (quoting Strickland, 466 U.S. at 688). Carrillo's ineffective assistance of counsel claim based on counsel's alleged failure to explain the nature of a stipulation therefore fails.

### c. Counsel failed to adequately inform Carrillo of the difference between a guilty plea, a conditional guilty plea, and a jury trial

Carrillo's next claim is that counsel did not give him sufficient information pertaining to the difference between a guilty plea and a jury trial. Mem. and Decl. on Mot. to Vacate Sentence, at 5. According to Carrillo, this failure caused him to reject an offer of a plea bargain from the government, which ultimately resulted Carrillo's receiving a lengthier sentence of imprisonment at trial. Id. The record in this case, however, does not reveal the existence of any

alleged plea bargain between the government and Carrillo. At any rate, the difference between a guilty plea and a jury trial ought to be self-evident to most individuals.

Carrillo also asserts that counsel's failure to inform him of the option of making a conditional plea of guilty falls below the level of accepted professional norms for defense counsel. Id. Carrillo, however, fails to explain how a conditional plea of guilty would have changed his ultimate conviction or sentence. A conditional plea of guilty allows a defendant to reserve the right "to have an appellate court review an adverse determination of a specified pretrial motion." FED. R. CRIM. P. 11(a)(2). If on appeal the defendant prevails, he is then entitled to withdraw the plea. Id. Here, Carrillo appealed the motions that were denied by this court directly to the Seventh Circuit. Carrillo, 269 F.3d at 766. However, the appellate court affirmed the denial of those motions. Id. at 767. Carrillo therefore fails to establish how the trial or sentencing would have been different if not for counsel's alleged error. Carrillo's assertion that counsel was ineffective for failing to fully explain the nature of guilty pleas and trials therefore fails.

### d. Counsel made no reasonable argument on Carrillo's behalf at sentencing nor asked for a downward departure

Lastly, Carrillo asserts that counsel made no reasonable argument on his behalf during sentencing. Mem. and Decl. on Mot. to Vacate Sentence, at 6. He specifically contends that it was unreasonable for defense counsel to not request a downward departure based on Carrillo's status as a deportable alien. Id.

The contention that counsel did not make a reasonable argument during sentencing is clearly belied by the record. The record demonstrates that defense counsel did present mitigating

12

factors during the sentencing hearing. For example, defense counsel explained to the court that Carrillo had a child and a fiancée. Sentencing Hr'g Tr., at 23-24. This argument was at least partially successful, because the court gave Carrillo the minimum sentence allowable under the Sentencing Guidelines, 151 months imprisonment. Id. at 25-26.

Carrillo also asserts that his counsel's performance was deficient because counsel did not request a downward departure based on Carrillo's status as a deportable alien. The Seventh Circuit has indicated that in some cases, it may be a reasonable tactical decision of counsel's to refrain from requesting a downward departure. See United States v. Bradford, 78 F.3d 1216, 1227 (7th Cir. 1996). Again, the court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsel's strategic decisions in this case. See Harris, 894 F.2d at 877. Moreover, it was not objectively unreasonable for counsel not to request this departure, as the court had rejected a co-defendant's argument for a similar departure earlier that same day. See Sentencing Hr'g Tr., at 15.

In addition, no prejudice resulted from counsel's failure to request a downward departure. In order to succeed in a request for a downward departure based on a defendant's deportable alien status, circumstances must show that the alien's imprisonment would result in severe or unusual conditions of confinement. See United States v. Egwaoje, 335 F.3d 579, 588 (7th Cir. 2003); see also United States v. Meza-Urtado, 351 F.3d 301, 305 (7th Cir. 2003) (quoting United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997)). Carrillo fails to explain why his confinement would be more difficult to endure than that of a United States's citizen. Moreover, the court asked Carrillo whether he wished to speak on his own behalf during his sentencing hearing. Carrillo responded, "No. I have nothing to say." Sentencing Hr'g Tr., at 24. Carrillo's assertion that counsel's performance at the sentencing hearing was ineffective therefore fails.

### 4. Carrillo's Request for an Evidentiary Hearing

Carrillo requests an evidentiary hearing in order to examine the actions of the court and his counsel. Mem. and Decl. on Mot. to Vacate Sentence, at 6. Evidentiary hearings are not required if the § 2255 "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 ¶ 2; see also Bruce v. United States, 256 F.3d 592, 597 (7th Cir. 2001); Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995). Two of Carrillo's claims in his § 2255 motion are procedurally defaulted, and are meritless. His assertions of ineffective assistance of counsel fall well short of the Strickland standard. The record thus conclusively shows that Carrillo is not entitled to relief under § 2255. Carrillo's request for an evidentiary hearing is therefore denied.

### III. CONCLUSION

For the foregoing reasons, Anselmo Carrillo's Motion to vacate, set aside, or correct his sentence brought pursuant to 28 U.S.C. § 2255 is denied.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: August 2, 2005

14